UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

March 31, 2021

LETTER TO COUNSEL

    RE:   *Dawn B. v. Saul*
           Civil No. DLB-19-3047

Dear Counsel:

    On October 18, 2019, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. ECF 14 ("Pl.'s Mot."); ECF 15 ("Def.'s Mot."); ECF 18 ("Pl.'s Resp."). I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

    Plaintiff filed her claims for benefits on May 27, 2016, alleging an onset date of December 31, 2015. Administrative Transcript ("Tr.") 188-94, 195-202. The SSA denied her claims initially and on reconsideration. Tr. 118-23, 129-30. An Administrative Law Judge ("ALJ") held a hearing on June 28, 2018. Tr. 37-63. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-31. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1-3; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

    The ALJ found plaintiff severely impaired by "obesity, status-post brain aneurysm, diplopia, right sixth nerve paresis, degenerative joint disease of the right knee, status-post aneurysm of the right popliteal artery, torn meniscus of the right knee, depression, and mood disorder." Tr. 17. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she never can climb ladders, ropes, or scaffolds; she occasionally can climb ramps and stairs, stoop, balance, and crouch; and she never can kneel or crawl. The claimant must avoid concentrated exposure to moving machinery and unprotected heights. She can perform simple and routine tasks in a setting with no production-pace work such as on an assembly line or carries strict quotas. She can perform work that does not require fine depth perception.

Tr. 21. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform any of her past relevant work as a desk clerk, data entry clerk, deli clerk, or title examiner but could perform work existing in significant numbers in the national economy. Tr. 28-30. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 30-31.

On appeal, plaintiff argues the ALJ "failed to create any logical bridge between her discussion of [p]laintiff's right knee impairment and other lower extremity issues with her conclusion that [p]laintiff could perform a limited range of light work." Pl.'s Mot. at 10. The Commissioner disagrees and argues "the ALJ properly included restrictions prohibiting kneeling and crawling to account for the knee impairment[s]." Def.'s Mot. at 9-10. Further, he contends:

> [t]he decision shows that the ALJ based … her RFC assessment on consideration of the medical evidence, including the lack of evidence showing any sustained impairment in [p]laintiff's gait, and the opinions of the State agency medical consultants, which were given appropriate weight.

*Id.* at 9. While I agree with the Commissioner that the ALJ concluded the postural limitations accounted for plaintiff's torn meniscus and osteoarthritis, I agree with plaintiff that the ALJ failed to explain her conclusions with respect to plaintiff's knee impairments. Accordingly, I remand, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

An ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 1996 WL 374184 (July 2, 1996)) (internal quotation marks omitted). "In other words, the ALJ must both identify evidence that supports [her] conclusion and 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) (internal citation omitted). "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).

After assessing plaintiff's RFC, the ALJ concluded plaintiff could perform light work even though she had an unrepaired meniscus tear and osteoarthritis in her knee. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means [eight]

*Dawn B. v. Saul*
Civil No. DLB-19-3047
March 31, 2021
Page 3

hours a day, for [five] days a week, or an equivalent work schedule." SSR 96-8p, 2016 WL 374184, at *1 (July 2, 1996). Meanwhile, "light work" encompasses jobs that "require[e] a good deal of walking or standing…[or] involve[e] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Further, "[t]o be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.* The ALJ's conclusion that plaintiff could engage in light work thus reflects an assessment that plaintiff could, despite osteoarthritis of the knee and a torn meniscus, spend a "good deal" of eight hours a day, five days per week, walking or standing. While that conclusion may not be inherently flawed, it certainly must be explained. To the extent the Commissioner argues her normal gait explained that conclusion, that observation, while not irrelevant, does not explain how plaintiff could sustain that gait for forty hours per week or an equivalent schedule.

Neither does the remainder of the ALJ's analysis explain that conclusion. The ALJ acknowledged that plaintiff's meniscus tore and that she was diagnosed with osteoarthritis. Tr. 25. She acknowledged plaintiff's "tenderness about the medial joint line and about the medial plateau;" "pain at the extreme ranges of motion;" treatment with a cortisone injection; prescriptions for hydrocodone and naproxen, Tr. 25-26; and surgery scheduled to repair the meniscus and treat the osteoarthritis, Tr. 26. The ALJ also discussed at length plaintiff's aneurysm and associated complications. Tr. 25-26.

Yet, in contrast to her discussion of the evolution of plaintiff's popliteal aneurysm, the ALJ failed to connect the evidence of plaintiff's degenerative joint disease and torn meniscus to her conclusion that plaintiff could engage in light work. The ALJ seems to have substituted her discussion of plaintiff's popliteal aneurysm for discussion of her "recent knee impairments." *See* Tr. 27. Plaintiff, however, has clearly presented evidence of more than one knee impairment. The evidence suggests that her degenerative joint disease and meniscus tear required, or at least were sufficient to warrant, surgical intervention. The only reason plaintiff did not receive that intervention is because, on the day the surgery was scheduled to take place, plaintiff was sent to the emergency room with a "complete occlusion of [her] popliteal artery stent," which was caused by the cessation of her anti-coagulation medication in preparation for surgery. Tr. 26.

The ALJ noted certain subsequent improvements in plaintiff's knee. However, while treatment notes from a follow-up "arterial" appointment at the Center for Vascular Medicine indicate that plaintiff experienced "overall symptom improvement," that appointment clearly dealt with plaintiff's popliteal aneurysm. *See* Tr. 623-26. The "present illness" recounted in those treatment notes relates solely to her vascular issues. Tr. 623 (discussing only vascular issues). Additionally, the only mention of her musculoskeletal system or meniscus tear in that record comes in the form of a note that on exam she had a normal gait, which, as discussed above, does not explain her RFC. *See* Tr. 623-26. In contrast, treatment notes from an orthopedic appointment after her popliteal aneurysm resolved state that "her pain [was] not improving" and that she continued to complain of "constant sharp pains with swelling." Tr. 636. Plaintiff stated that "nothing alleviates her pain," and that her pain level was a six out of ten. Tr. 636. At that appointment, her physician ordered Hyalgan injections in an attempt to relieve her pain without

further surgical intervention. Tr. 637. The ALJ did not explain how postural limitations account for these impairments. Instead, the ALJ merely restated her conclusion that while plaintiff "continue[d] to have undertreated conditions, including a meniscus tear that [could not] be repaired … due to [plaintiff's] need to be on anti-coagulant therapy, [she] accommodated limitations in such impairments in the [RFC] above." Tr. 22-23. This statement falls short of an *explanation* given the substantial evidence indicating relatively serious knee impairments.

Finally, the Commissioner's argument that the partially-weighted medical consultants' opinions explain the ALJ's conclusion is unpersuasive given that both consultants reviewed the record before plaintiff's relevant knee impairments appeared. The medical consultant at the initial level, Dr. Najar, determined plaintiff's physical impairments did not disable her on October 13, 2016. Tr. 71-75, 83-87. Dr. Najar considered plaintiff's "stroke, brain aneurysm, headaches, [and] poor vision." Tr. 66-67, 78-79. On reconsideration, Dr. Boas considered the same impairments. Tr. 90-91, 102-03; *see* Tr. 66-67, 78-79. Dr. Boas noted that plaintiff was seen in December 2016 for knee pain, in her left knee, that she had for a few days. Tr. 95, 107. Dr. Boas' exertional RFC determinations, which he signed on March 9, 2017, mirrored Dr. Najar's determinations. Tr. 97-99, 111-13; *see* Tr. 71-75, 83-87. Both determined plaintiff was capable of light work. Tr. 71-75, 83-87, 97-99, 111-13. However, the first significant evidence of plaintiff's torn meniscus, which occurred in her right knee, appeared at an August 30, 2017 primary care appointment, or about three months after Dr. Boas reviewed plaintiff's record. *See* Tr. 25; Tr. 403 ("She comes for an urgent visit. She twisted her right knee a week ago. She was seen at urgent care and was a given a brace. She has swelling of the knee and is unable to put weight [sic]."). The ALJ nonetheless found plaintiff capable of the exact same exertional level as did the consultants. *See* Tr. 21, 71-75, 83-87, 97-99, 111-13.

In this case, the evidence and the ALJ's conclusion are both clear. But the Fourth Circuit requires more than a recitation of the record and an overarching conclusion as to the significance of that evidence. Rather, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio*, 780 F.3d at 636. Here, the ALJ's opinion failed to include that discussion. Remand is therefore necessary.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 14, is denied, and the Commissioner's motion for summary judgment, ECF 15, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

*Dawn B. v. Saul*
Civil No. DLB-19-3047
March 31, 2021
Page 5

      Despite the informal nature of this letter, it should be flagged as an opinion.  A separate order follows.

                                               Sincerely yours,

                                                   /s/

                                             Deborah L. Boardman
                                             United States Magistrate Judge